IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MINTEX, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| PROFESSIONAL ACCOUNT | § | |
| MANAGEMENT, LLC; DUNCAN | § | |
| SOLUTIONS, INC.; DUNCAN | § | CIVIL ACTION NO. 3:23-cv-00301-B |
| SOLUTIONS, LLC; AND NAVIENT | § | |
| SOLUTIONS LLC AS SUCCESSOR IN | § | |
| INTEREST, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' MOTION FOR PROTECTION AND MOTION TO QUASH SUBPOENAS TO BRIAN DUNN AND ERIC HUNN

Defendants Professional Account Management, LLC, Duncan Solutions, LLC f/k/a/ Duncan Solutions, Inc.,[1] and Navient Solutions, LLC[2] (collectively, "Defendants,") move the Court to protect them from Plaintiff's additional, unnecessary oral discovery and to quash Plaintiff's subpoenas upon two out-of-state fact witnesses pursuant to Federal Rule of Civil Procedure 45. Defendants respectfully show the Court the following:

## I.    SUMMARY OF THE ARGUMENT

Plaintiff initiated litigation almost 13 months ago against Defendants on December 30, 2022. This Court's deadline for completion of discovery is February 20, 2024. Immediately after the Court denied Plaintiff's Motion for Leave to Extend the Discovery Deadline by another two

---

[1] Duncan Solutions, Inc. is no longer in existence. The corporate status of Duncan Solutions was changed to a LLC and, after the name change, the entity is now known as Duncan Solutions, LLC

[2] Throughout this litigation, Plaintiff has been referring to Navient Solutions, LLC ("NSL") as a "successor in interest." This is an incorrect statement. NSL is a student loan servicer and simply an affiliated company with Duncan Solutions, LLC and Professional Account Management, LLC. NSL was not involved with the events surrounding this lawsuit.

months, Mintex served deposition notices and subpoenas upon two of Defendants' out-of-state employees (the "Subpoenas"). *See* Exhibit A.[3] The Subpoenas seek these employees' remote depositions on Plaintiff's unilaterally-selected dates.

This is a straight-forward, alleged breach of contract action between two businesses. Both sides' corporate representatives have collectively been deposed for almost 12 hours. Plaintiff concedes that it never executed a written subcontract for the disputed toll collection project, Project No. 3.[4] Plaintiff also concedes it never performed any work on Project No. 3[5] Defendants likewise testified that no subcontract existed between the parties.[6] Yet, Plaintiff alleges that it needs additional testimony from Defendants' employees because it apparently wants to drill deeper into the "multiple versions" of an irrelevant document – NTTA Form 4906.

This NTTA-prepared standard form accompanies a prime contractor's bid response and describes who the Minority Business Enterprises ("MBEs") on a project may be *if* a NTTA contract was awarded to Defendants.[7] Importantly, the Form 4906 does not constitute a legal and binding

---

[3] Although Defendants contest that the subpoenas are inappropriate and defective, Defendants' counsel agreed to accept service of the Subpoenas on January 5, 2024, and did not force Plaintiff to physically serve the witnesses.

[4] The NTTA requires the existence of a subcontract agreement between the prime contractor and subcontractors, and Plaintiff admitted during its corporate representative deposition that no such agreement was ever entered into by the Parties. *See* Thomas Dep. 153, 9-11 (Nov. 2023) (Q: "Do you have a subcontract agreement for Project No. 3?" A: "We do not."); *See* Mintex 29 ("[Submission of the Commitment Agreement Form 4906] also represents a commitment by the prime contractor that if it is awarded the contract, it will enter into a subcontract agreement with such subcontractor for the work described at the approximate price and percentage set forth in the bid/proposal."); *See* PAMDU_0000329 ("Contractor will obtain from all subcontractors, and cause to be extended to NTTA, appropriate representations, warranties, guarantees, and obligations for all Deliverables furnished by subcontractors…").

[5] Thomas Dep. 91, 8-11 (Nov. 2023) (Q: "We've already covered that you agreed that Mintex didn't perform any collection work on Project Number 3, right?" A: "Correct.").

[6] Hunn Dep. 75, 5-10 (Dec. 2023) (Q: "Okay. Now, are you able in looking at this document to testify as to what those percentages are?" A: "The percentages were never finalized because Mintex and PAM never finalized and negotiated a subcontract for services.").

[7] Hunn Dep. 155, 1-18 (Dec. 2023) (Q: "Well, I mean, as the corporate representative, do you – and I'm not asking you all the nuance details, but there were different terms that PAM was sending to Mintex that were not in the original 4906. Is that a fair statement?" A: "…When – the request from Mr. Dunn and Mr. Thomas for an updated 4906, there were some updates to the form. Again, that form is a commitment form committing the two parties to work together under some – a couple of terms on the form to fill it out per NTTA requirements. There would be a whole host of other business terms to be negotiated under a more detailed scope of work, and that's where feedback never was received to move the relationship forward from Mintex.").

contract between Plaintiff and Defendants because a formal subcontract and statement of work between the Parties are required, which was admittedly absent here.[8]  Plaintiff's allegation—that because the Parties signed a Form 4906, the Parties entered into a contract—is blatantly incorrect. A signed 4906 cannot be a contract unless it is accompanied by signed statement of work and subcontract agreement between the Parties. The Form 4906, on the other hand, merely contains the signatures of the prime and subcontractors, the subcontractor's federal ID number, a brief six word description of the services Plaintiff was contemplated to perform and a price estimate of how much Plaintiff could expect to be paid if it performed on Project No. 3. The Form 4906 itself is not an agreement to perform services and does not contain material terms.  In the collections industry, the material terms that dictate a project are contained within a statement of work which is later memorialized in a subcontract agreement.  Defendants' employees—even if it were appropriate to depose them—will not offer unique or different testimony from Defendants' corporate representative on whether Defendants and Plaintiff entered into a subcontract or signed a statement of work for Project No. 3.

The Court should grant Defendants protection and quash the Subpoenas for at least three reasons: (1) the fact witnesses live in Pennsylvania (Hunn) and Wisconsin (Dunn), which is indisputably beyond the scope of the 100-mile subpoena power afforded by Rule 45(c)(1)(A). Plaintiff cannot circumvent that Rule by noticing a remote deposition. *See infra;* (2) Plaintiff

---

[8] Thomas Dep. 109, 2-7 (Nov. 2023) (Q: "Are you changing that testimony?" A: "…We were still working on the Statement of Work."); Thomas Dep. 162, 21- 25 (Nov. 2023) (Q: "So you'd agree with me that a subcontractor agreement was necessary; that they can't just place business with you?" A: Correct. We needed to finalize the Statement of Work in subcontract form."; Thomas Dep. 187, 9-14 (Nov. 2023) (Q: "If you respond to an RFP…and you decide that you later don't want to enter into a Statement of Work, you can walk away from it, could you not?" A: "Yes, we could."). *See also* Mintex 962("I'm requesting the support of your office to assist determining if Mintex's subcontracting *non-status* with both awarded Prime Vendors is in *adherence with the BED Business Diversity Project, RFP, NTTA & Vendor contractual expectations/guidelines*."); *See* Exhibit E (PAMDU 51) ("Due to the fact that *there isn't a business relationship*, Mintex must utilize resources and tools to fight for what s contractually ours.") (emphasis added).

already deposed Defendants' corporate representative, Mr. Hunn, for approximately five hours, and passed the witness.[9]  Deposing Mr. Hunn in his individual capacity is cumulative, unnecessary and harassing; and, (3) the Parties previously stipulated to the Court in their Joint Report that they would engage in limited oral and written discovery "primarily focus[ed] on Plaintiff's alleged belief that a contract exists among the parties."  Mr. Hunn's and Mr. Dunn's testimony in their individual capacities will not differ from Mr. Hunn's testimony as Defendants' corporate representative.  For these reasons, and as described in more detail below, Defendants request that this Court grant them protection and quash the Subpoenas for these out-of-state employees' depositions.

## II.      ARGUMENTS AND AUTHORITIES

### A.      Plaintiff Cannot Subpoena Fact Witnesses Who Live Beyond 100 Miles of This Court.

Per Federal Rule of Civil Procedure 45, a subpoena can only require a person to attend a deposition: (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c).  As Plaintiff knows, Mr. Dunn lives in Wisconsin and Mr. Hunn lives in Pennsylvania.  Plaintiff apparently attempts to circumvent Rule 45 by invoking Rule 43, which provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). However, there is nothing in Rule 43(a)'s language that permits the court to compel the testimony of an individual who is indisputably outside the reach of its subpoena power. *See Lea v. Wyeth LLC*, No. 1:03-CV-1339,

---

[9] Hunn Dep. 183, 20-25 (Dec. 2023) (Q: "With that, Mr. Hunn, I'm going to go ahead and subject to recalling you to the extent it's needed for any documents that have not been produced, and I know your counsel will have an issue and she and I can talk about that, I'm going to pass the witness. And I appreciate your time and patience with me today.").

2011 WL 13195950, at *1 (E.D. Tex. Nov. 22, 2011) (denying motion to compel testimony via video transmission because Rule 43(a)'s language does not permit a court to compel an individual's testimony who is outside the court's subpoena power). Even if this Court could circumvent Rule 45's requirements, Plaintiff has failed to show the necessary good cause and compelling circumstances mandated by Rule 43(a). *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2021 WL 2822535, at *4 (D. Kan. July 7, 2021) ("[E]ven if the court were willing to ignore Rule 45's limits on its subpoena power, plaintiffs haven't shown good cause to allow testimony from a remote location instead of live in the courtroom."); *see also, Broumand v. Joseph*, 522 F. Supp. 3d 8, No. 20-cv-9137(JSR), 2021 U.S. Dist. LEXIS 37533, at *10 (S.D.N.Y. Feb. 27, 2021) (rejecting a reading of Rule 45 that "would have to conclude that testimony via teleconference somehow moves a trial to the physical location of the testifying person" and concluding that such an "approach is inconsistent with the text of Rule 45(c), which speaks, not of how far a person would have to travel, but simply the location of the proceeding at which a person would be required to attend" and "any other reading would render Rule 45(c)'s geographical limitations a nullity and bestow upon any [court] sitting anywhere in the country the unbounded power to compel remote testimony from any person residing anywhere in the country"); *Cross v. Wyeth Pharms., Inc.*, No. 8:06-cv-429-T-23AEP, 2011 U.S. Dist. LEXIS 67348, at *9 (M.D. Fla. June 23, 2011) (denying plaintiffs' motion to compel live testimony by contemporaneous transmission when "each non-party witness resides outside the scope of Rule 45").

Here, Plaintiff fails to show good cause to remotely depose these two fact witnesses. Each side's corporate representatives previously testified on the key issue in this case and confirmed

that no contract exists.[10]  Plaintiff had the opportunity to depose Mr. Hunn for up to 7 hours already.  He chose to only use 5 hours and 15 minutes before passing the witness.  Plaintiff cannot show good cause for why it needs an additional 14 hours to depose Mr. Hunn or Mr. Dunn, especially on the heels of discovery closing.  Defendants' corporate representative was authorized to bind the Defendants with his testimony and has done so.

Employees of corporate defendants who are not officers, directors, or managing agents are not considered parties and are thus "not subject to deposition by notice. Rather, the employee is treated as any other non-party," and "before being compelled to testify, he or she must be served with a subpoena pursuant to [Rule 45]."  FED. R. CIV. P. 37(d)(1)(A)(i); *Cloud v. Cumulus Media New Holdings, Inc.*, Civil Action No. 3:22-CV-1673-N, 2023 U.S. Dist. LEXIS 53606, at *2-3 (N.D. Tex. 2023).  Mr. Hunn and Mr. Dunn are not officers, directors or managing agents of Defendants; therefore, Plaintiff needed to serve them with subpoenas.  In this case, the Subpoenas are technically defective because no witness or mileage fees were paid, which requires this Court to quash them.  *United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022-Z, 2022 U.S. Dist. LEXIS 247201, at *9 (N.D. Tex. 2022). Plaintiff's counsel has merely e-mailed the notices and Subpoenas but failed to pay any fees.  If a subpoena requires a person's attendance, Rule 45(b)(1) requires "tendering the fees for 1 day's attendance and the mileage allowed by law." A deposition witness is entitled to a statutory fee of $40 and a reasonable mileage allowance based

---

[10] Thomas Dep. 152:12-153:11 (Nov. 2023) (Q: "Mr. Thomas, under Page 24 that you were just quoting to me, 'Submittal of Required Documentation,' you make a good point that NTTA requires not only a signed, fully executed Form 4906, but also that the prime contractor 'will enter into a subcontract agreement with such subcontractor for the work described at the appropriate price.' Did that happen here?". A: "Well, that's the Statement of Work that's still out there." Q: "It didn't happen here, did it? You don't have a subcontract agreement, which is required by NTTA, do you?" A: "We do not."; Hunn Dep. 102, 13-16 (Dec. 2023) (Q: "Okay. Can you – just in general terms what is that? What do you recall about it?" A: "…well, this time there was no contract…"); Hunn Dep. 79:25-80:7 (Dec. 2023) (Q: "…Now, on to the Up to Total 658 [on the Form 4906], what does that mean, sir?" A: "So my belief is that this was an *estimate* forecasting at the time of our proposal how much third-party debt collection revenue PAM could earn…") (emphasis added).

on his mode and distance of transportation. *See* 28 U.S.C. § 1821(b)-(c). Even where the mileage allowance would have been less than $5, the Fifth Circuit has required compliance with Rule 45(b)(1). *See In re Dennis*, 330 F.3d 696, 705 (5th Cir. 2003). Accordingly, Plaintiff's defective Subpoenas should be quashed. *Planned Parenthood Fed'n of Am.* at *9.

> **B.      Plaintiff Already Deposed Mr. Hunn For Five Hours and Passed the Witness.**

Plaintiff has not shown or demonstrated what testimony it needs from Mr. Hunn in his personal capacity, particularly when Plaintiff already had up to 7 hours to depose him a month ago in Defendants' corporate representative deposition. Mr. Hunn is not being individually sued. Over the course of Plaintiff's more than 5-hour long deposition, Mr. Hunn competently responded to 16 different deposition topics including: the role of the Form 4906, the NTTA's requirements for the Form 4906 as a component of the bid submission, the actual submission of the Form 4906 for Project No. 3, that this submission was *not* the Parties entering into a contract to work together on Project No. 3, and Defendants' status as a prime contractor on Project No. 3. Mr. Hunn testified that he was unaware of any other versions of the Form 4906; however, no additional testimony is needed regarding any other versions of the Form 4906. Plaintiff already asked Mr. Hunn about the requirements of, submission of, and the effect of the submission of the Form 4906—anything more would be duplicative or irrelevant. *Arrant v. Standard Crane & Hoist LLC*, No. 2:21-CV-03569, 2023 WL 2775517, at *3 (W.D. La. Apr. 4, 2023) (finding additional testimony to be unreasonably cumulative or duplicative); *Sw. Bell Tel., L.P. v. UTEX Commc'ns Corp.*, No. A-07-CV-435 RP, 2009 WL 8541000, at *3 (W.D. Tex. Sept. 30, 2009) (cautioning deposing party to restrict questioning appropriately to minimize duplication and reduce the burden of a second deposition). There are not additional, relevant topics for these fact witnesses to answer when all relevant topics were exhausted during Mr. Hunn's December 5, 2023 corporate representative deposition. If Plaintiff were to depose Mr. Hunn or Mr. Dunn in their individual capacities, their

7

testimony would not differ from what was already provided in Defendants' corporate representative deposition. Plaintiff's Subpoenas would therefore merely prolong discovery, be unnecessarily cumulative, increase expense, harass the witnesses, and still establish what Plaintiff tries its best to hide—that there was no contractual agreement between the parties and that Plaintiff consequently incurred no damages.

> **C.     The Parties Previously Agreed Oral and Written Discovery Would Be Limited.**

On April 3, 2023, the Parties filed their Joint Status Report to the Court, which was the product of much discussion between counsel. *See* Dkt. 13. Within that Joint Status Report, the Parties stated: "The parties agree that one corporate representative deposition of no more than 7 hours is sufficient for each side….the parties further agree that no more than 20 interrogatories, request for production and requests for admission shall be asked of each side." *Id.,* p. 6 at (v). Additionally, concerning fact discovery, the parties "anticipate that discovery will primarily focus on Plaintiff's alleged belief that a contract exists between the parties. . ." *Id.,* p. 5. Notably absent was Defendants' agreement to unlimited fact witness depositions of its out-of-state employees, even if by remote means.

Courts are also reluctant to impose heavier burdens on non-parties, especially when Plaintiff cannot demonstrate the non-parties possess unique knowledge. *See Greco v. NFL*, No. 3:13-CV-1005-M-BK, 2015 U.S. Dist. LEXIS 201371, at *12 (N.D. Tex. 2015); *Davis S R Aviation, LLC v. Rolls-Royce Deutschland & Co. KG*, No. A-10-CA-367 LY, 2011 U.S. Dist. LEXIS 137051, at *5-6 (W.D. Tex. 2011) (denying plaintiffs' motion to compel depositions from non-party as the burden of the depositions exceeded the expected probative value of the testimony). Here, Plaintiff cannot show that the deposition testimony it seeks would be for some "unique, firsthand relevant knowledge that is unobtainable from another source." *Computer*

*Acceleration*, 2007 U.S. Dist. LEXIS 103806, 2007 WL 7684605, at *1 (E. D. Tex. 2007).  Such information was already obtained from Defendants' corporate representative. The fact that Defendants' testimony was unhelpful to Mintex is not enough reason to allow it to seek further depositions of out-of-state non-parties.  Accordingly, the Subpoenas should be quashed.

### III.    PRAYER

WHEREFORE, Defendants respectfully request that the Court quash Plaintiff's Rule 30(b)(1) Notice of Depositions and Subpoenas to Brian Dunn and Eric Hunn and grant Defendants such other and further relief to which they may be justly entitled.

Dated:  January 16, 2024                                  Respectfully submitted,


                                        */s/ Tricia DeLeon*
                                        Tricia R. DeLeon
                                        Texas Bar No. 24005885
                                        Tricia.deleon@hklaw.com
                                        Wynter Scott
                                        Texas Bar No. 24125699
                                        Wynter.Scott@hklaw.com
                                        One Arts Plaza
                                        1722 Routh Street, Suite 1500
                                        Dallas, Texas 75201
                                        (214) 964-9500 (Main)
                                        (214) 964-9501 (Fax)

                                        **HOLLAND & KNIGHT LLP,**

                                        **ATTORNEYS FOR DEFENDANTS,
                                        PROFESSIONAL ACCOUNT
                                        MANAGEMENT, LLC;
                                        DUNCAN SOLUTIONS, LLC,
                                        F/K/A DUNCAN SOLUTIONS, INC.;
                                        AND NAVIENT SOLUTIONS, LLC**

9

## CERTIFICATE OF CONFERENCE

In accordance with the Local Rules, Counsel for Defendants have personally attempted to contact counsel for Plaintiff regarding the resolution of this dispute, as follows:

Thursday, January 4, 2024 via email, response, but no agreement.
Thursday, December 14, 2023 via email, response, but no agreement.
Tuesday, November 13, 2023 via email, response, but no agreement.

Counsel for Plaintiff have indicated that Plaintiff is opposed to the relief requested. Certified on this 16th day of January, 2024 by Wynter Scott.

*/s/ Wynter Scott*
Wynter Scott


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Motion for Protection and Motion to Quash Subpoenas to Brian Dunn and Eric Hunn was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service in the above-referenced case, are being served this 16th day of January 2024, with a copy of the above-document via the Court's CM/ECF System.

*/s/ Tricia DeLeon*
Tricia R. DeLeon

10